IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Joanne Randazzio,                              :
                    Plaintiff               :      Civil Action 2:13-cv-00689

        v.                                       :      Judge Watson

Carolyn W. Colvin,                          :      Magistrate Judge Abel
Acting Commissioner of Social Security,
                    Defendant               :


**REPORT AND RECOMMENDATION**

Plaintiff Joanne Randazzio brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

her application for Supplemental Securing Income benefits. This matter is before the

Magistrate Judge for a report and recommendation on the parties' cross-motions for

summary judgment.

**<u>Summary of Issues.</u>** Plaintiff last worked in 2001. She maintains that she is dis-

abled from all work activity based on her mental impairments. She is diagnosed with

bipolar disorder and posttraumatic stress disorder. She complains of anxiety and agora-

phobia.

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The mental residual functional capacity determination and subsequent step
  five determination were not supported by substantial evidence; and,
- The administrative law judge's evaluation of Nurse Practitioner Debbie
  Marshall was procedurally deficient.

**Procedural History.**  Plaintiff Joanne Randazzio filed her application for disability insurance benefits on January 25, 2010, alleging that she became disabled on December 30, 2009, at age 57, by bipolar disorder.  (R. 93, 115.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On November 16, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 24.)  A vocational expert also testified.  On December 19, 2011, the administrative law judge issued a decision finding that Randazzio was not disabled within the meaning of the Act.  (R. 50-65.)  On April 23, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 3-5.)

**Age, Education, and Work Experience.**  Joanne Randazzio was born December 22, 1952.  (R. 93.) She completed the seventh grade.  (R. 116.)  She has worked as a bartender.  She last worked in 1998.  (R. 116.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Randazzio's testimony as follows:

> [S]he worked as a bartender until 2001 when she quit. She has applied for jobs since but not seriously. She did not apply for disability benefits until 2009 because she was living with her boyfriend who was supporting her . She still lives with him but they are not a couple. Her 41 year old daughter also lives with her. The claimant said she could not work because she is so uncomfortable with paranoia that she hates to leave her house. She [goes] to medical appointments but does not do grocery shopping. She does household chores but is limited by shortness of breath. She is able to cook and clean.

When she is paranoid she feels like something bad is going to happen and she found that the lot [sic]. She takes Cembrex and Klon-opin. The medications help her sleep better. When she is depressed, she can sleep for two or three days and when she is not depressed she is up for 2 to 3 days. She watches television all day. Sometimes she sits outside because she lives in the middle of nowhere. Her ex-cited he is [sic] triggered by thinking that she might have to go some-where. She said she has been attacked four times which is what start-ed it all. She has no other friends and [is] not in contact with any other family members beside her daughter. She gets mad and starts crying a couple times a week. She has difficulty with short-term memory and her daughter keeps track of things for her.

(R. 59.)

**Medical Evidence of Record.** This Report and Recommendation will only summarize the evidence concerning Randazzio's mental impairment in some detail.

Ms. Debbie Marshall, C.N.P. On February 11, 2010, Ms. Marshall, a certified nurse practitioner, began treating plaintiff. Ms. Marshall diagnosed bipolar I disorder, most recent episode mixed, severe, without psychotic features; posttraumatic stress disorder; and alcohol dependence in sustained full remission. She assigned a Global Assessment of Functioning ("GAF") score of 50. Randazzio reported a history of full manic episodes lasting at least one week characterized by decreased need for sleep, excessive energy, extreme irritability, racing thoughts, psychomotor agitation and severe distractibility. Ms. Marshall indicated that plaintiff presented with the above symptoms in addition to symptoms of depression, including dysphoric mood, feelings of worthlessness, hopelessness, social isolation and anhedonia. (R. 183.)

On February 24, 2010, Ms. Marshall completed a mental status questionnaire at the request of the Bureau of Disability Determination. Plaintiff was described as well groomed with a clear speech pattern. She had a stable mood and good affect. She became nervous around people. She had no apparent thought disorder and was oriented to time and place. Her memory was good and she could be overly organized at times. Her judgement was fair. She had difficulty remembering directions and got lost easily. She had a panic attack when she got lost in the agency walking to a drinking fountain. She was able to maintain attention for the most part. She could complete simple tasks in a timely fashion. Social interaction frequently caused her panic attacks. She did not do well adapting to others. Plaintiff had been experiencing an increase in her anxiety and would not last long in the work setting given the pressures of interacting with others. (R. 178-80.)

On March 24, 2010, plaintiff reported that since starting the Symbyax, she had significant improvement in her depression, irritability, anxiety, frustration to tolerance, and her sleep. She was able to shut her mind down at night so that she that she could relax enough to fall asleep. Her daughter noticed a significant improvement in her mood. She reported some possible side effects from her medication including tinnitus, shakiness, hand tremors, and feeling high. Adjustments were made to plaintiff's medications. She appeared to have racing thoughts and mild paranoia. She had an anxious mood with full affect. (R. 220-21.)

On May 5, 2010, plaintiff reported that she was "really depressed." She reported excessive sleep and decreased energy and motivation. She found it more and more difficult to leave home and had been cancelling her therapy appointments as a result. Her symptoms of psychomotor agitation, pressured speech, and racing thoughts were improved. She also had less irritability. Plaintiff reported that she felt as though people were staring at her and judging her when she was out in public. Her mood was dysphoric with reactive affect. (R. 218-19.)

On June 16, 2010, plaintiff reported she had noticed little improvement in her depression and felt that her anxiety was worse. She had been unable to leave her home even for her therapy appointments. Her daughter performed all of her grocery shopping. She reported excessive sleep and low energy. She did not feel right and reported feeling "high." (R. 233-35.)

On June 30, 2010, Ms. Marshall completed a second mental status questionnaire at the request of the Bureau of Disability Determination. Plaintiff's mood was described as euthymic to irritable with reactive affect. Plaintiff had difficulty sitting still and often fidgeted. Her voice was tremulous. She was oriented in all four spheres. She had poor concentration due to marked distractibility and racing thoughts. She had difficulty with her short-term memory.

Ms. Marshall diagnosed bipolar I, most recent episode mixed in partial remission for less than 12 months; alcohol dependence in sustained full remission; posttraumatic stress disorder. Ms. Marshall opined that plaintiff's abilities to remember, understand

and follow directions were moderately impaired. Her abilities to maintain attention and to sustain concentration, persist at tasks, and complete them in a timely fashion were moderately to markedly impaired. She also indicated that plaintiff was agoraphobic. (R. 215-17.)

On July 28, 2010, plaintiff appeared in greater distress despite the addition of a medication for anxiety. She had sores on her upper extremities and face from picking at herself when she is stressed. She was isolating herself. Her depression and irritability had improved and she could sleep without difficulty. She felt constantly tense and on edge. She worried excessively. (R. 236-38.) On September 8, 2010, plaintiff reported her anxiety had worsened. She was not able to leave her home without severe panic and anxiety. She avoided activities that required her to leave her home. She appeared anxious, tremulous and hypervigilant. Her picking behavior had improved slightly as she had no visible sores. She slept well. She was no longer irritable or angry. She was more forgetful and struggled with recall, although she exhibited no memory deficits in the appointment. She recently experienced a dissociative episode lasting several days and was unable to recall any events for those days despite engaging in normal daily activities. (R. 240-41.) On October 6, 2010, plaintiff reported feeling better. She remained hypervigilant, anxious. She frequently looked out the window during the appointment. (R. 242-44.)

On November 4, 2010, plaintiff reported worsening depression. She had low energy and motivation. Her anxiety, consisting of agoraphobia, remained problematic.

Her sleep was adequate. She reported paranoia, hypervigilance and constant feelings of impending doom. (R. 245-47.) On January 12, 2011, plaintiff reported that despite an increase in Wellbutrin, her mood remained the same. She reported increased irritability, deterioration in her sleep, and anxiety. She continued to have difficulty leaving her home. (R. 248-50.) On February 23, 2011, plaintiff reported a definite improvement in her mood and improved, yet still broken, sleep. (R. 251-53.)

On April 6, 2011, plaintiff reported doing well except for a few "blue periods." She reported sleeping too much. (R. 254-56.) On May 18, 2011, plaintiff reported she was "holding steady." She denied any manic symptoms or difficulty with sleep or appetite. She had moderate energy levels. With the nicer weather, she was planning on getting outside to garden. (R. 257-59.)

On July 13, 2011, plaintiff reported worsening anxiety. She had high energy, anxiety, and irritability. She was not sleeping again. She remained agoraphobic. (R. 281-83.)

On September 1, 2011, plaintiff reported heaviness in her chest and difficulty breathing. She reported sleeping well and that her mood was even. She denied hypo-mania. She still struggled with anxiety. She complained of muscle aches. (R. 278-80.) On October 26, 2011, plaintiff reported that since starting Cogentin, she no longer had muscle aches in her legs. Her depression had worsened over the past three years, and she remained agoraphobic. In the days prior to a scheduled appointment, plaintiff experienced heightened anxiety, poor sleep, and panic symptoms including tachy-

cardia, palpitations, and shortness of breath. She complained of increased confusion, distractibility and forgetfulness. (R. 275-77.)

T. Rodney Swearingen, Ph.D. On April 6, 2010, a psychologist, evaluated plaintiff at the request of the Bureau of Disability Determination to assess the presence and nature of any existing disability.

Plaintiff quit school in the seventh grade because she was pregnant. She did well in school and enjoyed it. Plaintiff started receiving outpatient mental health care in December 2009. She had "bad nerves". She reported a history of alcohol problems. She has not had alcohol in four or five years. She last worked as a bartender, but she had also worked as a cook and cocktail waitress. The longest job she held was for 18 years. When she worked, she had no problems getting along with co-workers or supervisors. She had no problems following instructions at work and was able to perform repetitive tasks.

On mental status examination, Randazzio spoke in a fast, direct voice. Associations were goal oriented. There was no apparent flight of ideas or poverty of speech. Her receptive and expressive language was average, and she was an average historian. Plaintiff had good eye contact during the evaluation. Her affect was reactive with anxious qualities, and her prevailing mood was anxious. She said she was "not good" physically; she felt tired and worn out.

She reported feeling depressed and anxious. Her appetite was good. She had difficulty falling and staying asleep. She had occasional crying spells and recurrent

8

thoughts of death, but she had no suicidal or homicidal ideation. At times, she felt hopeless and worthless. Her energy level was described as "pretty high." She reported mood swings, irritability, racing thoughts, impulsivity, and suspiciousness.

Randazzio reported that she became nervous and anxious when she was away from home or getting into a car. She experienced anxiety attacks when she went to doctor's appointments. She experienced nausea, sweating, the urge to flee, dizziness, lightheadedness, shortness of breath and chest pain. She stayed home due to her fear of having an attack in public. She was easily irritated and angry when things were out of order. She had a fear of heights and reptiles. She worried a lot about her bills.

Randazzio denied hearing voices or seeing things. She reported suspiciousness of others and believed that people were watching her, following her, or trying to hurt her. There were times when she thinks about things all the time even when she tries not to. She reported compulsive behaviors. She reported intrusive memories of her parents' deaths and memories of being attacked. She had bad dreams, flashbacks and periods when she shut down emotionally.

Plaintiff was alert and responsive and oriented to person, place and time. She was able to repeat seven digits forward and three digits reverse. Her abstract ability was average with similarities. She was unable to perform the serial sevens tasks. Her concentration and persistence were satisfactory. She worked at a satisfactory pace. She had no difficulty understanding or following instructions.

Plaintiff spent her days watching television and cleaning. She had no friends. Her daughter performed her shopping.

Dr. Swearingen diagnosed bipolar I disorder, most recent episode mixed, severe without psychotic features; posttraumatic stress disorder; and alcohol dependence in sustained full remission. He assigned plaintiff a GAF score of 52. Dr. Swearingen concluded that plaintiff's ability to relate to others, including co-workers and supervisors, was moderately impaired. Dr. Swearingen opined that plaintiff would likely have significant difficulty adapting or relating to others due to her mental health conditions. Plaintiff's ability to understand, remember and follow instructions appeared mildly impaired. She would have some difficulty following organized, complex instructions, but she would likely be able to follow simple, repetitive instructions in a work-related environment. Dr. Swearingen opined that plaintiff's abilities to maintain attention, concentration, persistence and pace to perform simple, repetitive tasks were mildly impaired. Her symptoms of anxiety would impair her ability to process information. She would likely be able to perform simple, repetitive tasks, but she would have difficulty performing organized, complex tasks. Plaintiff's ability to withstand the stress and pressures associated with daily work activity was moderately impaired. She would be unable to handle stress adequately. Dr. Swearingen noted that when plaintiff was nervous, anxious, or under periods of significant stress, she experienced crying spells and anxiety attacks. He further opined that she would likely have significant difficulty handling any type of stress in a work-related environment. (R. 191-95.)

<u>Patricia Semmelman, Ph.D.</u> Dr. Semmelman, a psychologist, completed a mental residual functional capacity assessment and psychiatric review technique. Dr. Semmelman concluded that plaintiff was moderately limited in her ability to understand and remember detailed instructions. With respect to sustained concentration and persistence, plaintiff was moderately limited in her abilities to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. With respect to social interaction, plaintiff was moderately limited in her abilities to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting.

Dr. Semmelman noted that despite plaintiff's reports that leaving her house made her ill, she was not ill when seen by Dr. Swearingen. Nor did Dr. Swearingen did observe any kind of overt anxiety or witness a panic attack. Dr. Semmelman concluded that plaintiff's statements were partially credible due to statements that she only left her house for doctor appointments. During her consultative examination, she reported that she took long walks when she felt anxious. Although she spoke fast, she did not present with pressured speech. With respect to her activities of daily living, plaintiff reported that could concentrate and attend for only a minute or two, but this statement was inconsistent with Dr. Swearingen's conclusions with respect to her abilities to complete

work-related tasks. Plaintiff also reported that she enjoyed gardening and doing crafts. Dr. Semmelman opined that plaintiff was able to perform simple, repetitive tasks in a static work environment where change is well-explained and social interactions were kept infrequent and superficial. Dr. Semmelman found plaintiff had only mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. (R. 196-213.)

On September 9, 2010, Marianne Collins, Ph.D. reviewed the evidence in the file and affirmed the conclusions of Dr. Semmelman as written. (R. 230.)

Khozema Rajkotwala, M.D. On August 25, 2010, Dr. Rajkotwala performed a disability examination at the request of the Bureau of Disability Determination. Dr. Rajkotwala diagnosed depression, anxiety, insomnia, and shortness of breath. Although plaintiff complained of difficulty falling asleep, Dr. Rajkotwala noted that she drank ten cups of coffee a day. Her physical examination was unremarkable. Plaintiff was able to sit, stand, and walk without difficulty. She could lift and carry 25-30 pounds frequently and 30-35 pounds occasionally. (R. 222-28.)

**Administrative Law Judge's Findings.**

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2001.

2. The claimant has not engaged in substantial gainful activity since September 30, 2001, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.      The claimant has the following severe impairments during the period under consideration: bipolar disorder, posttraumatic stress disorder, and alcohol dependence in remission (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to perform simple repetitive tasks in a static work environment where change is well explained, and social interactions are infrequent and superficial.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on December 22, 1952 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 52-64.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The mental residual functional capacity determination and subsequent step five determination were not supported by substantial evidence. At the hear-

ing, the administrative law judge posed a hypothetical question to the vocational expert concerning an individual of the same age, education, and work experience, with no physical exertional limitations who could only engage in simple, repetitive tasks in a static work environment where change is well explained, social interaction is kept infrequent and superficial. The administrative law judge concluded that Randazzio had the mental residual functional capacity to perform simple repetitive tasks in a static work environment where change is well explained and social interactions are infrequent and superficial. In determining her mental residual functional capacity, the administrative law judge indicated that he adopted the state agency non-examining opinions. He also adopted Dr. Swearingen's opinion and gave it great weight. By accepting Dr. Swearingen's opinion, the administrative law judge failed to resolve a contradiction between his opinion and the mental residual functional capacity determination. The vocational expert was not asked to consider whether jobs were available under Dr. Swearingen's assessment. Dr. Swearingen opined that plaintiff was capable of simple, repetitive work within two of the work-related abilities. Dr. Swearingen found significant limitations in the other two areas of ability which diverge widely in formulation from the functional assessment statements of Swearingen's narrative. Dr. Swearingen opined that plaintiff had significant difficulty handling any type of stress in a work-related environment. Plaintiff argues that it was error for the admin-

istrative law judge to explicitly adopt the limitations identified by Dr. Swearingen but fail to present these limitations in the hypothetical question presented to the vocational expert.

- <u>The administrative law judge's evaluation of Nurse Practitioner Debbie Marshall was procedurally deficient</u>. Debbie Marshall, a certified nurse practitioner, provided her opinion as to plaintiff's functional limitations on a mental status questionnaire provided by the Bureau of Disability Determination. Ms. Marshall indicated that she served as Randazzio's sole psychiatric treating source. She diagnosed bipolar I disorder, most recent episode mixed; post-traumatic stress disorder; and alcohol dependence in sustained, full remission. Ms. Marshall opined that Randazzio was moderately impaired in remembering, understanding, and following directions; moderately to markedly impaired in the abilities to maintain attention, and to sustain concentration, persist at tasks and complete those tasks in a time fashion. Plaintiff's symptoms included racing thoughts, pressured speech, tremulous psychomotor activity with fidgety behavior, marked distractibility, short-term memory problems, and mood varying from euthymic to irritable. The administrative law judge failed to evaluate Ms. Marshall's opinion in accordance with SSR 06-3p.

**Analysis.**  <u>Accuracy of Hypothetical Given Vocational Expert: Legal Standard</u>. Plaintiff argues that the Administrative Law Judge's hypothetical to the vocational

16

expert was not supported by substantial evidence because it did not contain all of the limitations expressed by Dr. Swearingen.

In determining whether a claimant is disabled, an administrative law judge makes a residual functional capacity determination. That finding is an "assessment of the claimant's remaining capacity for work" once his or her limitations have been taken into account. 20 C.F.R. § 416.945. It is "a more complete assessment of her physical and mental state and should include an 'accurate[ ] portray[al] [of her] individual physical and mental impairment[s].' *Varley,* 820 F.2d at 779; *Myers v. Weinberger,* 514 F.2d 293, 294 (6th Cir.1975) (per curiam)." *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002).

When a vocational expert testifies, the administrative law judge asks the expert to assume certain facts about the claimant's work abilities. The facts in this hypothetical are the administrative law judge's residual functional capacity findings. The administrative law judge must accurately state each limitation that affects the claimant's ability to work. If there is not substantial evidence supporting the limitations the administrative law judge includes in the hypothetical to the vocational expert, then the expert's testimony is not substantial evidence supporting the Commissioner's decision denying benefits. *Howard,* 276 F.3d at 240-42. If a limitation that substantially affects the claimant's ability to work is established by uncontroverted medical evidence, it is error for the administrative law judge to omit this limitation from the hypothetical given the administrative law judge. 276 F.3d at 242.

Accuracy of Hypothetical Given Vocational Expert: Discussion. The administrative law judge adopted the opinions of the State Agency psychologists and Dr. Swearingen. The administrative law judge found that evidence received into the record following the reconsideration determination did not contain any credible or objectively supported new and material information that would alter the State Agency's findings concerning plaintiff's limitations. The administrative law judge indicated that Dr. Swearingen was the only acceptable medical source who examined plaintiff with respect to her mental impairment. Plaintiff argues that despite adopting Dr. Swearingen's opinion, the administrative law judge failed to include all of the limitations identified by Dr. Swearingen when formulating plaintiff's residual functional capacity. The administrative law judge concluded that plaintiff retained the residual functional capacity to perform simple repetitive tasks in a static work environment where change is well explained, and social interactions are infrequent and superficial. Dr. Swearingen concluded that plaintiff's ability to relate to others, including co-workers and supervisors, was moderately impaired and her ability to understand, remember and follow instructions appeared mildly impaired. Dr. Swearingen concluded that plaintiff would likely be able to follow simple, repetitive instructions in a work-related environment. Her abilities to maintain attention, concentration, persistence and pace to perform simple, repetitive tasks were mildly impaired, and her ability to withstand the stress and pressures associated with daily work activity was moderately impaired.

Plaintiff relies on Dr. Swearingen's statements that she would likely have "significant difficulty adapting or relating to others due to her mental health conditions" and that she would have "significant difficulty handling any type of stress in a work-related environment." (R. 195.) These statements are ambiguous. The statements were made in an effort to expand on his identification of moderate limitations with respect to her abilities to relate to others and to withstand stress. However, Dr. Swearingen found only moderate limitations rather than marked limitations. The State Agency reviewing psychologists further opined that based on Dr. Swearingen's examination, plaintiff was able to perform simple, repetitive tasks in a static work environment where change is well-explained and social interactions are kept infrequent and superficial.

Dr. Swearingen was the only examining "acceptable medical source," and the administrative law judge discounted the opinion of Ms. Marshall, plaintiff's sole provider of mental health treatment. Dr. Swearingen's opinion appears to contain incongruent statements that were not addressed by the administrative law judge. Because I find that this case should be remanded based on the improper evaluation of Ms. Marshall's opinion, on remand the administrative law judge should also seek clarification of Dr. Swearingen's opinion as to plaintiff's capacity to complete work-related abilities.

Opinion Evidence from "Other Sources." With respect to the opinion of Ms. Marshall, the administrative law judge stated:

> The only treatment evidence provided by the claimant is progress notes
> from a nurse practitioner who works at Central Ohio Mental Health Cent-
> er. She began seeing the nurse practitioner at the time she filed for dis-

ability and saw her for 20 to 25 minutes every 2 to 3 months. However, nurses' opinions are not entitled to controlling weight under Social Security Ruling 96-2p, nor are they treated as "medical opinions." Specifically, Social Security ruling 96-2p states that "opinions from sources other than treating sources can never be entitled to "controlling weight." *A nurse is not a "treating source," because 20 C.F.R. §§ 404.1502 & 416.902, define a "treating source" as a "physician or a psychologist."* Nurses' opinions are not "opinions" of a "medical source," as defined in 20 C.F.R. §§ 404.1502, 404.1527(a)(2), 416.902 and 416.927(a)(2), nor are they those of an "acceptable medical source," as defined in 20 C.F.R. §§ 404.1513 and 416.913. Because a nurse does not qualify under either of these definitions, their opinions are, pursuant to 20 C.F.R. §§ 404.1527 and 416.927, not "medical opinions." Given this, a nurse's opinion is considered only as to how it helps in the understanding of how an impairment affects the ability to work. 20 C.F.R. §§ 404.1514(e) and 416.913(e). The result of this classification is that their opinions are viewed in the same manner as "information from other sources" such as observations of non-medical sources, naturopaths, and social welfare agencies. Accordingly, the nurse practitioner's opinions regarding claimant's diagnoses, abilities, and functional severity are given little weight. In addition, the nurse practitioner appeared to rely primarily on the claimant's subjective reports during their brief monthly meetings, although even she noted on one occasion that the claimant's reports of memory impairment were inconsistent with the claimant's behavior during their session, as the claimant even reminded her of things that she had forgotten (Exhibit 9F/8). In short, the evidence from Central Ohio Mental Health Center is not accepted, as it is based primarily on the subjective reports of the claimant who is only partially credible, as made to a provider who is not an acceptable medical source.

(R. 61-62.) The administrative law judge was mistaken when he said that a nurse practitioner is not a "medical source." *See* 20 CFR § 404.1513 ("Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)"). Nurse practitioners are not considered "acceptable medical sources," but they are "medical sources."

Social Security Rule 06-03p states:

Opinions from "other medical sources" may reflect the source's judgment about some of the same issues addressed in medical opinions from "acceptable medical sources," including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions.

Not every factor for weighing opinion evidence will apply in every case. The evaluation of an opinion from a medical source who is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because, as we previously indicated in the preamble to our regulations at 65 FR 34955 , dated June 1, 2000, "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2) and SOCIAL SECURITY RULING 96-2p, "Titles II and XVI: Giving Controlling Weight To Treating Source Medical Opinions."

SOCIAL SECURITY RULING 06-03p at 2006 WL 2329939, *5. Here, there was no other

provider of mental health treatment. Ms. Marshall saw plaintiff regularly, prescribed

psychotropic medications, and provided a detailed record of plaintiff's symptoms. The

administrative law judge incorrectly assumed that great weight could not be given to

Ms. Marshall's findings because she was not an "acceptable medical source." That is not the case. The same factors used to evaluate medical opinions from acceptable medical sources should have been applied to the opinion of Ms. Marshall.

Accordingly, it is **RECOMMENDED** that this case be **REMANDED** to allow the administrative law judge to consider Ms. Marshall's opinion in light Social Security Ruling 06-03p**.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).


 s/Mark R.  Abel       
United States Magistrate Judge